Good morning, and may it please the court. My name is Anna Kirkosh. I'm with the law firm of Nichols Castor, and I represent the appellant Kathleen Bliss. I'd like to reserve five minutes for rebuttal. We'll try to remind you, but watch your clock. All right. The district court erred in its analysis of the statute of limitations, and this court should reverse. The Federal Wiretap Act makes it any. Wire, oral, or electronic communication, singular. Any communication. So any communication, if intercepted, would constitute a violation on its own. And that matters because the statute of limitations starts running when a plaintiff first has a reasonable opportunity to discover the violation. Not a series of calls, not a course of conduct, but the violation. And a plaintiff cannot have inquiry notice of the violation until it actually occurs. So here, until there are phone calls. The other important point of this is the relationship between accrual and the statute of limitations. Right? A plaintiff's claim accrues when all things have happened such that she has a so that she can file suit and obtain relief. And she can't do that until the violation, the phone call, occurs. Now, CoreCivic has cited numerous cases in which courts found wiretap, alleged wiretapping activity to be untimely. But in none of those cases did those violations or alleged violations occur within two years of plaintiff bringing suit. And that is because the earliest that a plaintiff can discover or have inquiry notice of a violation is the day it occurs. Now, at what point do you think that you did have knowledge of the violations here? I mean, so, you know, as I understand it on, I think it was June 27, 2016, you do you think that that's the date for for the calls prior to that? I realized there were more calls after that. But for the calls prior to that, is that the date on which you were on notice? Yes, for every call that had occurred up to June 27. That is the date of inquiry. Why? I'm just gonna ask, are you? Would you acknowledge them that you can't recover for calls prior to two years before you filed the complaint? Are you? We're really just talking about the calls that were within two years of when the complaint was filed. Correct. Okay. What? So, um, I want to press you on both ends of it. One is I wonder whether you're being too reasonable and the others. I wonder if not being reasonable enough. So on the two reasonable part, why are you alleging that when your client gets a dump of 500 to 1000 recordings on June 27 that the statute would begin to run on that day? I mean, that I deal with a lot of criminal discovery in my work, and it takes forever to go through 1000 recordings. Is there some index here or something that would have allowed her instantly to know that she had been recorded? She had been recorded. Her privileged conversations have been recorded. No. And I agree with you, Judge Schultz, that that there is no way for her to actually have reviewed that information. There is no way that she had actual knowledge, and there is no way that anything about that production could do something to give her consent to being recorded. But I do think that it is fair to say that that was inquiry notice for the purpose of starting the limitations period only. Nothing else. It does not touch on the merits. Okay, well, if you're willing to start on the date now, let's let me ask whether it should be earlier than that. Every time your client had a conversation, she heard a recording that told her we might be recording this conversation. Doesn't that at least put her on inquiry notice that she might be getting recorded? So two points on that one, that notice, and this has to be explored in discovery. And I want to come back to that. This notice we alleged was just uniformly insufficient because it was qualified. It said subject to monitoring and reporting, not that it would be recorded. The other point is that even if it was the best, most clear notice that it could be, the only thing that it could do on the limitations period is give her notice of violations that had already occurred because of the way the And, and this goes back to the relationship between accrual and the statute of limitations. Generally speaking, the statute doesn't start running until the claim accrues. So here until the call actually happens. And this, I don't I don't dispute I'm not disagreeing with you about that. It just occurs to me that let's say, six months earlier, six months before June 27. She makes a call and she hears a recording saying that this call is subject to being recorded by us. I think that probably puts her on inquiry notice. As of then, I don't think I'm suggesting that the statute would have been running before June 27. On the pre June 27 calls. I agree with you that it would be odd to say a statute of limitations began running on a call that hadn't taken place yet. So I'm with you on that. So I don't I don't think we have a dispute that to the extent that would put her on inquiry notice, it would only put her on inquiry notice of things that had already happened. It wouldn't start the clock running. The other point that I want to come back to because we touched on this idea of whether there was sufficient notice and having that explored in discovery. I know that the court has asked the question about whether there was an interception and that the party's supplemental briefs have touched on some merits based issues. I just want to highlight for the court here that poor civic first responded to written discovery in this case on January 4 2019 and moved for summary judgment approximately 21 days later. So poor civic has not been deposed under Rule 30 B six. In this case, Miss Bliss has not been deposed. We know that from a subpoena that 932 attorney client calls were recorded and potentially up to 30,000 more at this location. But we have not explored that. We don't have full discovery on the extent of this notice, whether it was sufficient or not. We don't have full discovery on this idea that people could get out of having their calls recorded, though, if they could. The fact that 900 to tens of thousands slipped through the cracks is a question of fact. And I say all of that because if the court is inclined to view those types of facts, including whether somebody went back and listen to those calls, whether they were disclosed, which are things we have alleged but not explored in discovery. If the court is inclined to view those facts as relevant to a determination of interception or something that goes beyond the timeliness issue, then I think a decision is premature because there Now, I don't think on the issue of interception, as long as you raised it, what do you what do we do with this Greenfield case? Part of your response was that it's wrong. And, and I don't mean it could be it could not be that we don't we don't get that we don't get to ignore it because it's wrong. So what's the next best argument? So the next best argument is that it is limited, Judge Schultz, and it is that it cannot have application here. So Greenfield directly called the sheriff's department, and the sheriff's deputy picked up the phone and was a party to that communication, presumably knowing full well that the call would be recorded. Right here, nobody called CoreCivic. CoreCivic recorded calls from detainees to their attorneys. It had a system set up that captured 930 to have those calls at minimum, and up to 30,000. That is active surveillance. And, and if the court is to say, well, you need something more, you need to show that they did it on purpose, then we are back to this idea of not having discovery. And so I think it really depends on so how the court chooses to engage with that inquiry. The other point that I will make about it is that there is not really a single example of a routine recording that doesn't meet the definition of active surveillance in its mind, right? Like we just have one example from that case. And it is distinguishable for all the reasons that I've said. I want to go back to the statute of limitations issue for a second. Why does it make sense for the statute of limitations to start over again with every new call when what CoreCivic is doing that your client is unhappy about, she knows, she has reason to know for the first call. So it's not like she's going to learn anything new about what's going on other than it's still happening. So what's the reason? Like, what's the benefit? I guess what I'm getting at is how is this serving the point of a statute of limitations of not having litigants sit on their rights? Well, part of it is that it doesn't, the statute of limitations doesn't work in a way, Judge Hunsaker, that allows the defendant to continue to violate the law just because a plaintiff might have noticed that something has happened. It doesn't obligate her to look into the future and determine whether something might happen again. So I want to return to this idea of the relationship between approval and the statute of limitations because the only examples that are stated in the party's briefs where the statute starts to run before the claim has actually accrued are ones where there is a clear congressional command for that to happen and also where the wrongdoing or the alleged wrongdoing has already happened, but the plaintiff couldn't bring suit because of, for example, an administrative exhaustion requirement or retroactivity or some kind of contractual bar paired with exhaustion. That doesn't exist here. So I mean, I guess I have another follow up on that. I mean, so there's several things that can be, that are a violation under the statute, interception, use of communications, disclosure of communications. And in those other context use and disclosure, they talk about content, which would seem to individualize what might be happening in their cases that say that with each new disclosure, you probably are triggering the statute of limitations over again because you're having a new injury. With interception, why is it unreasonable for us to construe that to say that it's this ongoing system that isn't changing from call to call, and therefore the violation itself is the application of the system. I mean, there's also, you know, the penalty statute in this case talks about, you get damages based on each day of violation, instead of, so that would presumably say that if you had five calls in one day, you're not getting a damage measure for each five calls, you're only getting one because it's each day of the violation, which suggests that you could read violation as a little bit broader than an individual call. All right, so when you talk about intercept, the definition is the oral or other acquisition of a wire, oral, or electronic communication. And wire communication is defined as any oral transfer, and any oral transfer, again in the definition section, is defined as any communication containing the human voice. And so when you capture that, that single instance, that is an interception. So if I may, I'd like to reserve the remainder of my time. Thank you, counsel. Good morning. My name is Nicholas Acedo, and I'm arguing today on behalf of Appley Corps Civic. The district court correctly determined that the wire tapping claims in this case were time-worn. The date of accrual is prescribed by statute. The civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation. Counsel, under your position, and again for statute of limitations purposes, if we assume that this interception did indeed violate the statute, is it your position that once she becomes aware that you have this continuous course of conduct of intercepting calls in violation of the statute, and she doesn't sue within the first two years, you can then go on intercepting her calls forever, and she can never sue because the statute of limitations has run out, and that's it. You can just keep going. Is that your position? Well, I disagree with the portion of that statement that we can go along intercepting calls forever. This is just related to whether or not her claims are time-barred. Well, why? Okay, but why? If you were to go on doing it forever, how would she ever be able to sue you? Well, she can sue, and she's got two years within the first opportunity that she had to investigate whether there was a violation, and she didn't have to wait two years. She didn't have to wait two years and two weeks. Okay, but in the world that we're in now, the two years have gone by. Your position is she can't sue you. If you keep on doing it, the cause of action isn't going to spring back to life, is it? Well, that's correct, Your Honor, and if I may explain why that's true, it's because here the violation, if you look at the statute, it talks in terms of, quote, the violation, end quote. The violation here was the alleged practice of routinely recording detainee legal calls. All of the calls that happened after or within the limitations period or two years before she filed her complaint, they all derive from that same pattern or scheme. She's alleging it's a wiretapping scheme. So if you go back to the statute, when did she first have a reasonable opportunity to discover that alleged scheme? And that would go back to June 27, 2016. I admit, Your Honor, this is not your ordinary case. The ordinary case, and plaintiffs cite a lot of them, is when there are discrete separate violations. They don't arise out of a scheme. It's a jealous ex-boyfriend or a controlling husband, and that is a wiretapping, a wife or a girlfriend, something like that. Here, in this case, it's a routine recording of all detainee calls. Can you give me any other example of a case in which there is a continuous course of conduct or scheme in violation of a statute? And if you don't sue within the limitations period as measured from the beginning of the scheme, you can never sue no matter how long the scheme continues thereafter? I would have to piece a couple of cases together. Admittedly, I think we've got two cases that are somewhat on point. The first is DIRECTV v. Webb. That's this court's decision in 2008. That case involved a system to intercept a single multiple video multiple times, and the court held that each interception by that system did not constitute a separate violation. Even though, in that case, the defendant had hardware, a hardware device, access devices, the court said even though he used 57 different access devices, because it was used in conjunction with a single system, we're not going to count each violation separately. It's all one violation. But there they were all happening at the same time, right? He diverted the signal once off to 57 devices, but it wasn't on 57 different days, for example. But I think it was over the course of time. I don't think that the opinion fleshes out when the access cards were put in, but he was pirating the cable over the course of time. So I think that case is very relevant to show that this court has at least recognized that the statute contemplates and understands that there can be violations in different ways, one of them in which there is a system or a practice in place that generates multiple interceptions. We've also cited the Sparshot case out of the DC Circuit. In that case, the court recognized that a claim accrues once they had a reasonable opportunity to discover the underlying wiretapping scheme. That court, too, recognized that there are these potential schemes that can be taking place. Now, there is another part of the decision where the court did not specifically address whether recordings within the limitations period were involved or not. It didn't expressly address that issue, but the District Court ruled that they were time barred. If you note in the decision, it noted that the District Court instructed the jury that if you find that the defendant had a reasonable opportunity or the plaintiff had a reasonable opportunity to discover on this date, all calls after that would be time barred. Just to make your position concrete, I noticed in your brief that you made this suggestion that when Ms. Bliss was representing Mr. Bar-Aria four years before the calls that issue in our lawsuit, she may have learned of the jail recording system. So let's just assume she did. So you're saying that the statute of limitations on her lawsuit involving her calls with Mr. Kincaid ran before she ever spoke to Mr. Kincaid. Correct? That's a little more nuanced than that, Your Honor. It's our position that when Ms. Bliss requested, what she requested were all jail recordings of the defendant Bar-Aria obtained by the government during defendant's incarceration, including all privileged communications received and reviewed. It's our position at that point, having been a prosecutor, an attorney prosecuting and defending wiretap cases for more than 20 years, that she was on noted. She says that she at least suggests that she believes that there's recording of privileged communications. I'm with you. I'm willing to concede that. And therefore, the statute of limitations on the lawsuit arising out of her calls with Mr. Kincaid ran before she ever spoke to Mr. Kincaid. I think you're putting too much emphasis with respect to the calls to Kincaid, even though she had made those calls again. Her claim is based. The violation alleged is the recording of her calls, not limited to Kincaid's calls, her calls to Kincaid or Kincaid's calls to her. We have to assume for our purposes today that when the jail your client was recording the calls with Mr. Kincaid, it was violating the law. We're only here on statute of limitations today. We're assuming a violation, so it's violating the law by recording these calls from Mr. Kincaid. But she can't sue because four years before she started talking to Mr. Kincaid, she learned of the system, and that would mean the statute of limitations on her claims involving the illegal recording of her calls with Mr. Kincaid ran before she spoke to Mr. Kincaid. I think this seems hard to believe. Well, I believe what we argued in our motion below and in our briefing on appeal is that you look at the Bereria request in conjunction with the request that she made in the Kincaid case. So our position is that no later than June 27, 2016, when she was receiving the 500 to 1,000 calls in conjunction with the Kincaid case, no later than that date, her claim did not accrue no later than that date. So we look at both pieces of evidence to determine whether or not she had a reasonable opportunity. We're not trying to isolate one or the other. She had, we believe she had noticed, given her position as an attorney, Assistant United States Attorney and a criminal defense attorney, her request in the case of Mr. Kincaid for receiving the information in June 2016 with respect to the Kincaid calls, specifically those calls. So all we need to show is that she was on a reasonable notice to investigate whether there was criminal activity afoot, and she had those CDs on that date. That's when it triggered, and Plans Council just conceded during her time that there's no dispute that that is the accrual date, at least with respect to claims before arising, calls arising before that date. Ultimately, this is a statutory analysis for us to figure out what the words of the statute mean. So what's your, I mean we've been arguing cases and other things, but what's your specifically statutory analysis of these particular words? We're focusing on two words within the accrual statute. The first is the word first. First, had a reasonable opportunity to discover, and then the last two sentences, the last two words in the statute, the violation. So the plaintiffs have been touting the discovery rule throughout this case, and ordinarily, you know, the discovery rule would apply in the absence of statutory authority. Ordinarily, under the discovery rule, a claim would not accrue until it's been completed, ordinarily. But it's our position that this is not the ordinary case, and when you look at the statute, what Congress did is it incorporated the discovery rule, but not in full. It modified it and actually made it a little bit more narrow by modifying the phrase reasonable opportunity to discover with the word first. That contemplates, or that suggests that Congress understood and contemplated that the statute could be violated in various ways, including through a wiretapping scheme. And in that instance, it wanted claimants to, it wanted the claim to accrue when it first had the opportunity to discover, so that the wiretap could quickly report it to law enforcement and disrupt the scheme. And also so that the subject couldn't sit on her rights. But what the statute defines as the violation, I mean, correct me if I should be looking at a different provision, but 2511 1a makes it unlawful for any person who intentionally intercepts, endeavors to intercept, you know, any wire or electronic communication. So the violation is the interception of a communication. It's not, you know, any person who sets in motion a system of recording communications. The violation is at the level of the individual interception, isn't it? Sure, and for purposes of criminal liability, that interception, it talks in terms of interception, but when you look at 2520, that statute talks about the limit, the accrual statute, 2520e, a civil action, a civil action under this section that contemplates a single action may not be commenced later than two years after the date upon which the claimant first had a reasonable opportunity to discover the violation. So what this court's job is today is to interpret what the words the violation means. When you look at that, that phrase in conjunction with a civil action, first opportunity, you put them all together, it at a minimum contemplates that the statute can be violated through a scheme, through a practice. And if you don't, if you allow a, let me, let me turn the hypothetical. If a subject does not report right away, the subject can sit on his or her rights indefinitely and rack up damages until they've made enough phone calls. If they're aware of a scheme, why would they be continuing to subject themselves to that scheme? And then rack up damages and then file suit when it's most advantageous for them. Congress could not have intended that result. Well, but only two years, right? I mean, they only get, they can't go back, you know, if they know about the scheme and they know about it, the two-year clock starts running with each call. Sure. So they can't go back indefinitely. Right, but within the first two years, they may have made five calls, but in the next three, in the, in the next, the year after that, there could have been a thousand calls. It allows the subject to manipulate the statute limitations to make it more advantageous for them. And that's not what Congress could have intended. I mean, this is a criminal statute that attaches to civil liability. And when you look, when you focus on the accrual statute, it says a civil action. It says first had an opportunity and it references the other. It certainly contemplates a wiretapping scheme and that any calls that are made after they first have notice of that scheme or alleged scheme all relate back. They all derive from that scheme. So once you know about the scheme, your clock should start at that point. Let me follow up on this issue of a plaintiff racking up damages after knowing of the scheme. So the damages are actual damages. And I would think if you kept making calls after you were being recorded, you'd have a hard time persuading a judge or jury to give you actual damages. And then there's statutory damages. And what I honestly just don't know, I didn't look it up, is our statutory damages mandatory or are they discretionary with the judge? I believe it's at the discretion of the plaintiff. If the plaintiff cannot calculate actual damages, I believe that they've got, they can request statutory damages and, and that statutory damages provision sets the cap of what those... Statutory damage statutes, they work differently. Some of them are mandatory where a plaintiff is entitled to know less than, even if the plaintiff can't show damages. And some of them are discretionary with the judge. And I, I just don't know what the answer is under the statute. The plaintiff is eligible for the alternative. And we haven't gotten to that point. I see I'm out of time. Any other questions? Thank you. Are there any other questions? Thank you, counsel. You have two minutes. Thank you. So I'd like to give the court three examples related to the questions that Judge Miller asked. So first, in Allen v. Brown, this is a DC District Court case involving wiretapping. The violations or occurred from 2013 to 2017. And the court allowed, denied a motion to dismiss on claims within two years of filing suit. In Direct TV, in re-cases involving Direct TV in Arizona, the court found that to the extent the violation continued into the period two years before the plaintiff filed suit, summary judgment would be denied. There was a fact question there. In Dish v. Vixon in that was filed on the same issues before the plaintiff filed suit. And there again, summary judgment was denied for the defendant. On the issue of Webb, there, there was a single signal, a single signal that was intercepted, right? It wasn't multiple phone calls separated by days or weeks or months. Here, Ms. Bliss had numerous conversations with her clients, including Mr. Kincaid. It is not reasonable to think those together constitute a single communication for the purpose of determining what the violation is under the act. And the idea that because the statute says that there's a private right of action so that you can file suit means that a plaintiff is limited to a single violation is just not the way lawsuits work, right? You can multiple violations within a single civil action, and that's what Ms. Bliss has alleged. Thank you, Counsel. Thank both counsel for their very helpful arguments this morning, and the case is submitted. That concludes our calendar for the day, and you're adjourned.
judges: Miller, Hunsaker, Schiltz